May it please the court, my name is Wayne Young. I represent the appellant, Sarsak. Mr. Sarsak was convicted of... Let me just mention that the other two co-appellants, Zayot and Jatawi, have had their appeals submitted on the brief. So you were only going to be speaking to Mr. Sarsak? That's correct. Mr. Sarsak was convicted of conspiracy and substantive count involving a large amount of pseudoephedrine. The narrow issue here is whether the trial court should have entertained Sarsak's motion for a new trial. He filed the motion for a new trial, pro se, argued in the motion he had to file it pro se because his counsel refused to do so and he only had a week to file it. He raised several issues about the accuracy of the transcripts of the Arabic to English... the translations of the Arabic to English transcripts of the undercover... Well, the translations didn't really amount to much, did they? There were only one or two words that really weren't that crucial? Well, that is what was argued in the subsequent motion by the subsequent counsel, but the transcripts permeated the trial. The trial basically consisted in large part of playing of the transcripts, then the English translations of the transcripts, and then the agents testifying about the meaning of the transcripts. Yes, there were a lot of them. I think maybe I understood Judge O'Scallion's question differently, and that is the alleged errors in transcription were very few and far between compared to the massive amount of transcripts that there were. And if that wasn't his question, it's my question. Why does that equal an abuse of discretion by the trial court, which is our standard of review? Well, the original pro se motion by Sarsak argued in part that the transcripts were inaccurate and that he had been tricked into stipulating to the accuracy of the transcripts. New counsel was eventually appointed and filed a supplement on the new trial motion that was found to be untimely. It's correct that in that supplemental motion, he only addressed a couple of the many transcripts that were filed in the trial. But Sarsak's fundamental objection was to the accuracy of the transcripts, that he had not been permitted by his counsel to review the transcripts or the original calls, and that he had been tricked into stipulating that the transcripts were accurate. And then the district court in the original motion made three findings. One, that the motion was timely, which we agree with, because it was lodged in a timely fashion. But secondly, the district court found it was not properly filed. And that's our fundamental disagreement. Well, it seems to me that what this, although this is a direct appeal, it looks a lot like an ineffective assistance of counsel claim in disguise, because the original counsel didn't file the motion in a timely fashion, and the replacement counsel took, I don't know, a year or a year and a half also to do it. And I guess why is, in view of that, why is there an abuse of discretion by the court here instead of potentially an ineffective assistance claim that could be raised on collateral review? Well, two reasons, Your Honor. It's an abuse of discretion because the Ninth Circuit authorizes the hybrid representation, authorized a finding that this was properly filed if the defendant shows a special need to file it, per se. And he did show the special need in arguing that his counsel in one week's time refused to file it. So given those circumstances, it's an abuse of discretion for the court never to have entertained the motion in finding that it was not properly filed because he was represented by counsel. And then the second reason also implicates the right to represent yourself. If your counsel refuses to file a motion, at some point the Faretta issue arises because he has this brief time to file it, his counsel won't do it, so it becomes a constitutional violation for the district court not to have entertained. And that's our essential argument. What kind of a showing is there in the record that he pursued his Faretta rights? Only that he filed it and said, my counsel refused to do this. Is that enough? I believe it is, Your Honor, given the circumstances of this case in that his counsel refuses. He's got a week to file. He doesn't speak English, you know, but the barest, and he files something, a three-page thing, calls it pro se. So he's asking by calling it pro se to represent himself. Now, he clearly didn't articulate, I'm pursuing under Faretta. But given that he's pro se, doesn't speak English, that is sufficient to constitute a request to represent himself. So the district court on that grounds then could have entertained the motion. Or to get back to Judge Graber's question, at minimum it shows a special need. Under the Olano case, the Condo case, the Ninth Circuit has clearly held that hybrid representation is authorized when there is a special need. And that special need was present here because counsel failed to do it. And so the district court never entertained the merits of the motion. And then counsel subsequently gets appointed. And a year, I think it's 14 or 15 months later, Judge Graber files a supplement. And the court finds that because the original was never properly filed, this is now the original, the subsequent filing. And that's untimely. So the merits, such as they are, of Mr. Sarsak's motion for a new trial have never yet been considered. And so our position is it should be remanded for hearing on the merits of his motion for a new trial because it was properly filed pursuant to that argument. And then the other argument is as well, at sentencing, the court erred in denying his motion for new counsel. We're all familiar with the test involving the adequacy of the inquiry or the extent of the conflict. And there are several significant conflicts here between Sarsak and his lawyer. One, counsel had forfeited or filed an untimely motion for a new trial. He never had the pre-sentence report translated into Arabic for him. He did not use an interpreter when meeting with him. So Sarsak brought all this to the attention of the court. The motion was denied, so he was forced to proceed at sentencing and ends up getting a sentence of 25 or 30 years with an attorney who had never spoken to him with a translator and never had until the day of sentencing had the PSR. Does the fact that this is the fifth request for counsel become significant? It certainly enters into it, Your Honor. But the other ones were all at pre-trial, in the pre-trial build-up to the trial. Now we're at sentencing and you have this counsel who doesn't file the motion for 14 or 15 months and then doesn't do all the other things I identified in terms of providing a translator, having the PSR translated, and he's forced to go forward at sentencing with this fellow who he's utterly lost confidence in. And it was significant because there was a downward departure in this case. So at least the court, a booker departure, at least the court was entertaining the notion of and did give a departure. So it's certainly possible that that departure could have been greater. Perhaps it would have been lesser had he had the counsel of his choice. But the fundamental issue, and so we ask when he's remanded, if the court accepts the argument about the motion for new trial should be remanded, new counsel appointed, and he have an opportunity to pursue the claims he made in his original motion for new trial. We reserve the rest of your time. We'll hear from the government. Thank you, Your Honor. Pardon me. May it please the court, I'm Christopher Brunwyn and I represent the United States. I want to go directly to some of the issues that defense counsel or appellant's counsel raised right away. As defense counsel argued, this is a case in which the court denied a new trial motion as untimely. And the standard here is whether the district court's decision to deny a motion for new trial could be considered an abuse of discretion when that motion was actually brought 15 months after. Well, if we accept counsel's argument that the pro se motion should have been filed as well as lodged, then it would not have been late. And if it wasn't late, the court would have had to entertain it. It wouldn't be an abuse of discretion standard. So what is our standard of review on the question whether the original piece of paper should have been filed? Well, I think there are two points on that, Your Honor. And the first is that counsel's assertions about hybrid representation are simply not supported in the authority he put forth. In the cases cited by appellant's counsel in support of hybrid representation, there are cases in which hybrid representation was not granted. And in the Alano cases and in the Condo case, which were cited by appellant's counsel, the court did not grant hybrid representation. And I think the court's determination, the Ninth Circuit, I believe, held that the court did not find that the law would compel the district court to accept hybrid representation and that there is no Sixth Amendment right to both self-representation and the assistance of counsel. And I think that if we look at what kind of scenarios could play out, if there were to be an absolute right for a defendant to file his own papers and be represented by counsel, it could create all kinds of problems. I don't think counsel was arguing for an absolute rule. I think he was arguing that there was a demonstration in this case of a special circumstance, i.e., a conflict with his counsel that should have permitted him to file this motion. What's your response to his argument about the record here? Well, I believe that the record indicates, and the court made very explicit in this record that directed the defendant and his counsel, albeit the counsel who was representing him at that time, and the substitute counsel, that the court was not going to accept the pro se submission for filing. And the court made that very explicit at that ruling and in appointing substitute counsel. So I believe that if the court, in looking at the equities of that circumstance, if the court is inclined to think that new counsel should have an opportunity to file a new trial motion or take some action, that may be one question. But it certainly, and there's nothing in the record or the law that suggests that new counsel or any counsel should be entitled to wait 15 months to bring an argument. And moreover, the second point that I would go to is that the motion that was eventually argued or filed in May of 2006 bore no relation to the pro se submission. Appellant's counsel's arguments about the assertions in the pro se motion about transcripts really don't appear in the pro se submission. In his May 2006 argument, defense counsel argued the translation of the word greedy and the identification of a speaker in the law, which, again, those points, and there were a list of points in the pro se submission, but those weren't any of them. And the transcripts, translations, weren't mentioned in that pro se submission. And moreover, the record in this case and the trial and the proceedings in this case reflect that the history of this case going to trial, the transcripts in this case were certified by an official court translator as accurate. Based upon that certification, which was submitted in the record, the parties stipulated to the accuracy of those transcripts. And while defendant argues or appellant argues about whether he understood that stipulation, the fact is, and the record reflects, it was read in open court repeatedly. Counsel, your opposing counsel suggests that there was an invocation of the Feretta right here in the submission made. What is your response? I don't believe that that was raised. I don't believe that there was that inquiry. I do believe that when the case... Well, in effect, I think he's suggesting that the district judge was put on notice, that this then-defendant was trying to invoke his own separate representation or at least hybrid representation, one or the other, but at least a Feretta-based claim. And I didn't mean to jump in if the court was not finished, but I don't believe there's anything in the record that reflects that the defendant was asserting his right to represent himself. And that's not reflected at that stage in the proceeding. It was not reflected at any point in the proceeding. And it was not reflected in May of 2006 when he again requested additional counsel. And I think counsel's references to the defendant's ability to communicate in English or communicate with his counsel is belied by the record in this case. The excerpts of record include the inquiry that the court made to defense counsel in May of 2006 on the subject of their communication and the ability to communicate between defendant and his counsel at that point in time. And I think the record reflects that counsel repeatedly stated to the court that he was always able to communicate effectively with the defendant in English. I think what the record reflects in this case is this is a defendant who consistently would take one position and change that position when it looked like things were about to come down against him in terms of the imposition of sentence. That's reflected when the trial begins and there is trial transcripts presented. There's the playing of the intercepted telephone calls. This defendant testified himself at trial. And with regard to the two issues that are identified in the subject of defendant's appeal, the use of the word greedy and the identification of the walk, this defendant specifically testified to those issues at trial. He acknowledged that he used the word greedy and he also talked about all the speakers. And as the court has also acknowledged, these were two brief incidents in and among about 50 transcripts that were played at trial. There was a tremendous amount of evidence that was presented in this case. And as far as the standard of a showing that would be required to support a new trial, that the evidence argued by the defendant preponderate against the jury verdict, that's not been shown here. I would agree with the court that there may be some argument on a collateral issue with regard to the representation, but I don't believe that there is any support for the conclusion that the court, the district court, abused its discretion to deny a new trial motion 15 months after the jury verdict. Thank you, counsel. Mr. Young, you have some reserve time. I think one of the issues that came up in Mr. Burnham's presentation was, did the district court in any way encourage Mr. Sarsak into thinking that his motion would be heard subsequently? And the evidence clearly shows he did. At the end of the hearing at which original counsel was excused, but the motion for new trial had been filed, Sarsak asked the court whether his motion for new trial was granted or denied. And the court said the motion, quote, would have to be filed by your new counsel if you thought it was meritorious. So that comment by the court, and that's it. That's the discussion I did about ineffective assistance claim, though, because his new counsel didn't do it within a week. His new counsel didn't do it for months. But there are cases, Your Honor, and certainly ineffective assistance is something else lurking around this case. But apart from that, there are cases that hold that if you file a timely motion for new trial, it can be supplemented down the road. So the court, at least by its comment, suggested to Mr. Sarsak that the supplement would be entertained and that his motion was timely and perhaps properly filed. And then the subsequent motion, the supplemental motion, there was some overlap. The court found it was completely different. I don't agree with that. There was a stipulation to the accuracy of the transcripts. That stipulation was not translated into Arabic. Normally when there's a stipulation, it's signed by the interpreter saying this document, the PSR, has been translated into Arabic. That is absent here. And Sarsak raised that in his motion. He clearly talks about the stipulation that he's been tricked into signing it. He understands it. And that occurs as well in the supplemental motion. Thank you, Counselor. Your time has expired. The case just argued will be submitted for decision and this Court will adjourn.
judges: O'scannlain, Graber, Gibson